```
 1
 2                IN THE UNITED STATES DISTRICT COURT
 3                  FOR THE DISTRICT OF PUERTO RICO
 4                              -oOo-
 5
 6  THE UNITED STATES OF AMERICA,)
                                 )
 7        Plaintiff,             )  Case No. 3:15-CR-00696-PAD
                                 )
 8  -vs-                         )
                                 )
 9  EDGARDO RAMOS-VICENTE,       )
                                 )
10        Defendant.             )
    _____)
11
12                     TRANSCRIPT OF PROCEEDINGS
13                        SENTENCING HEARING
        HELD BEFORE THE HONORABLE PEDRO A. DELGADO-HERNANDEZ
14         UNITED STATES COURTHOUSE, HATO REY, PUERTO RICO
                       THURSDAY, MAY 17, 2018
15  _____
16
17                  A P P E A R A N C E S
18  FOR THE UNITED STATES OF AMERICA:
19  AUSA Cesar S. Rivera-Giraud
20  FOR THE DEFENDANT:
21  Jorge E. Vega-Pacheco, Esq.
22  UNITED STATES PROBATION OFFICER:
23  Silvia Ortiz
24  STAFF INTERPRETER:
25  Enith Valdes
26
```

```
 1          (Proceedings commenced at 9:34 a.m.)

 2                          -oOo-

 3          THE COURT:  How many cases do we have this morning?

 4          THE CLERK:  Three sentencing hearings, Your Honor.

 5          THE COURT:  Call the first case.

 6          THE CLERK:  Criminal Case Number 15-696, the United

 7   States of America versus Edgardo Ramos-Vicente.  On behalf of

 8   the government, AUSA Cesar Rivera.  On behalf of defendant,

 9   Attorney Jorge Vega-Pacheco.  The defendant is present in court

10   and will be assisted by the court interpreter.

11          MR. VEGA-PACHECO:  Good morning, Judge.  Jorge Vega

12   on behalf of Mr. Edgardo Ramos-Vicente, and we're ready to

13   proceed.

14          THE COURT:  Good morning.

15          MR. RIVERA-GIRAUD:  Good morning, Your Honor.  AUSA

16   Cesar Rivera.  The United States is ready to proceed.

17          THE COURT:  Good morning.

18          Would the interpreter introduce herself?

19          THE INTERPRETER:  Good morning, Your Honor.  Enith

20   Valdes, staff interpreter.

21          THE COURT:  Thank you, ma'am.

22          Will the probation officer introduce herself?

23          THE PROBATION OFFICER:  Silvia Ortiz, for the record.

24          THE COURT:  Thank you, ma'am.

25          Mr. Rivera, is there any reason why the sentencing
```

1    hearing scheduled for today should be continued?

2              MR. RIVERA-GIRAUD:  No, Your Honor.

3              THE COURT:  Mr. Vega, is there any reason why the

4    sentencing hearing scheduled for today should be continued?

5              MR. VEGA-PACHECO:  None that I am aware of, Your

6    Honor.

7              THE COURT:  Mr. Ramos, good morning.

8              THE DEFENDANT:  Good morning.

9              THE COURT:  You are in court today to be sentenced.

10   Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Is there any reason why this hearing

13   should be postponed?

14             THE DEFENDANT:  No.

15             THE COURT:  Mr. Vega, did you discuss the full

16   content of the probation officer's presentence investigation

17   report with Mr. Ramos in the Spanish language?

18             MR. VEGA-PACHECO:  I did on two occasions, Your

19   Honor.  The first one via video teleconference, and when he was

20   brought back to Puerto Rico, again we went over the PSR, Your

21   Honor.

22             THE COURT:  Mr. Ramos, did you discuss the

23   presentence investigation report with your counsel?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Did he explain to you what the probation

 1    officer reported in your case?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Did you understand what he explained to

 4    you in that regard?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  In preparation for this hearing, the

 7    Court has reviewed the following documents:

 8         Number 1.  The plea agreement filed at Docket Number

 9    780;

10         Number 2.  The presentence investigation report filed at

11    Docket Number 983;

12         Number 3.  The addendum to the presentence investigation

13    report filed at Docket Number 1241;

14         Number 4.  The defendant's sentencing memorandum filed at

15    Docket Number 1087;

16         Number 5.  The United States sentencing memorandum filed

17    at Docket Number 1216; and

18         Number 6.  The defendant's motion in compliance, including

19    the certification by the United States Bureau of Prisons, filed

20    at Docket Number 1302-1.

21              Are there any other documents the Court should review

22    as part of this hearing?

23              MR. VEGA-PACHECO:  None that I am aware of, Your

24    Honor.

25              MR. RIVERA-GIRAUD:  No, Your Honor.  Those are the

1    same that we reviewed as well.

2            THE COURT:  Does the United States wish to make a

3    statement?

4            MR. RIVERA-GIRAUD:  Yes, Your Honor.

5            THE COURT:  Go ahead.

6            MR. RIVERA-GIRAUD:  Your Honor, as stated in our

7    sentencing memorandum, our recommendation will be a sentence of

8    imprisonment of 168 month in Count One of the Indictment, to be

9    served consecutively with a 60-month term of imprisonment for

10   Count Six, followed by 10 years of supervised release, with the

11   special conditions of supervision recommended by the U.S.

12   Probation Office.  There is a -- when preparing for this

13   hearing and reading the documents that the Court just

14   mentioned, and also included in both sentencing memorandums is

15   a controversy regarding an additional point or level that was

16   credited by the U.S. Probation Office to the guideline

17   calculation.

18           I have to say to the Court that the parties engaged

19   in plea negotiations in this case since the beginning of the

20   case.  We held many meetings.  We exchanged many emails.  We

21   reviewed the evidence to support the charges against Mr.

22   Edgardo Ramos-Vicente.

23           We also reviewed the history that he had within the

24   conspiracy, and also, we took into account the fact that

25   although he was the leader, or one of the leaders of the

1    organization, with his brother, Jean Carlos Ramos-Vicente, the

2    fact is that he was arrested before Mr. Jean Carlos

3    Ramos-Vicente, and before other persons.

4         He was arrested in possession of a firearm while he

5    was accompanied by another co-defendant.  And for that reason,

6    he left the conspiracy before, or at least we don't have any

7    information to suggest that he continued in the leadership of

8    this organization from jail.

9         For that reason, we tried to adjust in someway the,

10   the numbers or the guideline calculation in this case.  And we

11   arrive to a specific number and recommendation that we believe

12   is a sentence not greater than necessary in this case.

13        Without the additional point, we still believe that

14   the sentence that we are recommending to the Court is fair.  We

15   are not recommending a light sentence.  We understand that.

16        We believe that, at least from our behalf, the

17   recommendation of 168 month for Count One, and 60 month for

18   Count Two, that amounts to 228 month of imprisonment, and we

19   believe that, according to the participation of this defendant,

20   compared with the participation of other defendants, is --

21   sounds like a fair sentence.  And it is a sentence comparable

22   to sentences given to other persons in, similarly-situated in

23   these type of cases.

24        So I feel that I had to tell that to the Court

25   because we agreed to that.  And like I told the attorney, when

1    the United States agreed to a certain number, we don't do it

2    lightly.  We do it after thinking about the case.

3              After all, we were the ones who investigated the

4    offense.  We were the ones who interviewed the cooperating

5    witnesses in this case.  We were the ones who met with the

6    agents during the preparation of the case, so we know

7    everything about this case.  Particularly, this prosecutor was

8    the one who investigated this case since the beginning until it

9    was indicted.

10             And we've held several meetings with the cooperating

11   witnesses, and we gather all of the supporting documentation

12   that was given in discovery.  So after analyzing all of that

13   with defense counsel, we arrived to the recommendation that we

14   are giving today to this Court.  So we request to the Court to

15   accept our recommendation, at least in that sense, in the sense

16   of giving this defendant the points that we agreed to for his

17   role in the offense.

18             In addition to that, I -- in our plea agreement,

19   following our recommendation, the United States recommended

20   guideline imprisonment range would be 135 month to 168 month.

21   We are recommending the Court the higher end in Count One of

22   the Indictment, which is 168 month, because we believe that

23   this defendant had a big role in the offense and because of the

24   nature of the offense.  And as we stated in our sentencing

25   memorandum, because of the pervasiveness of this type of

1      offense in Puerto Rico, Your Honor.

2              This was an organization that possessed firearms;

3      that acts of violence were committed within the conspiracy.

4      And basically, they took over a public housing project.

5      Nothing in that public housing project could be done without

6      the permit of the members of the organization.

7              In addition to that, they were always in constant war

8      and fights with members of other drug-trafficking organizations

9      in the Town of Cayey.  And as we all know, Cayey is not a big

10     city.  That's not even San Juan, Puerto Rico.

11             Cayey is a small town in Puerto Rico, and it is

12     disruptive of the life and the safety of the persons in Cayey

13     to have that type of incident or war between rival gangs that

14     are almost located in the middle of the town.  You enter to

15     Cayey, and you could find the places, the operating places of

16     this drug-trafficking organization.

17             For that reason is that we are recommending the

18     higher end of the applicable guideline range in Count One of

19     the Indictment.  And we are recommending also the 60 month of

20     imprisonment for Count Six.

21             And in addition to that, we agreed in the plea

22     agreement to recommend to the Court that the time that this

23     defendant already served for a case that is relevant conduct to

24     the conspiracy charged in this case be deducted from the total

25     sentence that will be imposed today by Your Honor.  The

1    certification states the number.  The number is included in the
2    motion filed by defense counsel.  And I take it that it is two
3    years, four month and 24 days.
4           The United States stands by its plea agreement, and
5    we are recommending the Court to deduct the amount of two
6    years, four month and 24 days to the total sentence that the
7    Court will be imposing this morning.  Submitted.
8           THE COURT:  Thank you.
9           Mr. Vega.
10          MR. VEGA-PACHECO:  Your Honor, may it please the
11   Court?
12          I would like to divide my allotted time on two parts.
13   The first part, obviously, will have to do with addressing the
14   issue of the finding by the probation officer as to whether the
15   defendant should receive four points or three points, which was
16   the amount agreed upon.
17          First, I would like to state to the Court that, as
18   the Court is well aware, the guidelines are no longer
19   mandatory.  Obviously, the Court is mandated to consult the
20   guidelines, but the Court is not bound by any, any, by any
21   standard other than a fair sentence to be imposed, as I'm sure
22   the Court will do so today.
23          In this particular case, when we sat down to
24   negotiate the terms of this agreement, one of the things that
25   was salient is the fact as whether the defendant should receive

1    the full amount of leadership, was the fact that indeed the

2    defendant had been arrested in the year 2013, thereby

3    withdrawing fully from the conspiracy.

4           It was further discussed with the prosecutor that

5    indeed, once he finished his sentence that was imposed in that

6    particular case, the one that was imposed by Judge Garcia, he

7    went to the community.  And there is no evidence that he

8    further participated in this venture.

9           So in good faith, the parties sought to bring to the

10   Court what would be a fair assessment.  I understand that the

11   strict, and I use the word "strict," application could give

12   cause for the probation officer to find that four points should

13   be the full amount.

14          But, again, taking the case as a whole, I believe the

15   Court has grounds to find that indeed it should follow the

16   terms of the plea agreement, especially given the fact that

17   these are not light sentences.  These are stiff sentences that

18   the Court will impose today on Mr. Edgardo Ramos-Vicente.

19          Your Honor, I also state in my sentencing memorandum,

20   which I will not rehash, but in terms of the appropriate

21   sentence in this particular case, the defendant respectfully

22   submits that should the Court find that indeed the applicable

23   total base offense level is 32, rather than submitted by the

24   prosecutor, and rather than estimated by the probation officer,

25   rather than 33, I would urge the Court, given the age of this

1    defendant, to sentence him at the lower end of the applicable

2    guideline.  That is sufficient, but not more than necessary for

3    a person who is 41 years old.

4            Your Honor has attended all of the sentencing

5    guideline seminars that are provided by the Commission.  And we

6    have come to learn that the older a person gets, the less

7    likely he is to commit offenses again.

8            Here before the Court now you have someone, a person

9    who has spent a substantial time of his life already in jail,

10   and who we believe, Your Honor, not based on my

11   representations, but based on representations from his

12   daughters and neighbors who are here today, that he has changed

13   his life.  And I will get that further down as I approach stage

14   two of my allocution to the Court, Your Honor.

15           And given that fact, Your Honor, I believe that a

16   sentence of 135 months, plus the mandatory minimum of 60

17   months, is sufficient, but not more than necessary, to address

18   the offense in this particular case.

19           Your Honor, I would like now, if the Court will allow

20   me, to address the Court and present to the Court what I

21   believe are relevant personal characteristics of Mr. Edgardo

22   Ramos-Vicente.  Your Honor, the defendant, once he finished his

23   sentence in the relevant case wherein he was found with a

24   weapon and punished to serve 33 months, of which, by the

25   certificate that was tendered to the Court, actually served 28

1    months and 24 days, when he finished that sentence, he went

2    back to his community in Cayey.

3           Here in court today, Your Honor, you have, you have

4    today, Your Honor, Dona Olga Fuena (phonetic), who is a

5    neighbor of Mr. Ramos-Vicente.  She can attest to the Court, if

6    it were necessary, I think that my proffer should be sufficient

7    inasmuch as -- but she's here if the Court would want to hear

8    her testimony.

9           She's a person who lived in the vicinity where

10   Edgardo went to live following his, his -- the end of his

11   sentence.  During that time, Your Honor, he was instrumental in

12   assisting his wife, who is a community leader in the community.

13          And he, along with others, began rebuilding the

14   community.  To that end, they destroyed some houses that were

15   being used as, I forget the proper translation, (speaking in a

16   non-English language), or places where people use drugs,

17   destroyed those places, those structures, and made sure that

18   the community would come and pick up all of those wood and

19   thing, and essentially, cleaned the community.

20          Edgardo is a handyman.  He does plumbing, and in

21   doing so, he was able to help, not only Ms. Fuena, but other

22   members in the community who were rebuilding their homes in

23   that area.  That area has fully changed and is now a better

24   place, in great measure given to the effort made by Edgardo

25   when he exited jail for the last time.

1          While in the -- while serving his terms of

2    imprisonment, Your Honor, which has been a substantial time,

3    Edgardo has never had one chat; that is, one complaint as an

4    inmate at MDC, Atlanta or Miami, the places where he has been

5    housed.  And he's been able to take courses in English.  He has

6    worked in plumbing, as a handyman in Miami.  He has always been

7    working in the kitchen.

8          And as I'm sure the Court knows from the many cases

9    that it oversees and sentences and hears allocution, not

10   everyone is taken to work in the kitchen because, obviously,

11   it's one of those positions that is considered delicate within

12   the institutions.  But he's been able to work in the kitchen in

13   Puerto Rico, in Atlanta and also in Miami.

14         He has taken drug rehabilitation courses at, during

15   his time that he's spent in prison.  And, and he has,

16   essentially, done things to better himself.

17         Today, Your Honor, here in court you have Dona Olga

18   Melendez, who is his wife.  His two daughters are here in

19   court, essentially, showing to the Court that they support

20   "his" father, and that they will be there for him once he

21   finishes the sentence that the Court will impose today.

22         I will respectfully pray, Your Honor, that given the,

23   the holding in *Dean*, which, essentially, states that, if I may

24   summarize it, that, essentially, once the Court is faced with a

25   mandatory minimum weapons case, he can make adjustments to a

1    package or make a -- essentially, that the sentencing package

2    reflects everything in a particular case, without regard to the

3    sentencing guidelines applicable to the case that, that to

4    which there is no mandatory minimum.

5            In any event, in any event, Your Honor, the Court is

6    not asked to sentence the defendant below any mandatory

7    minimum, which, in the best case scenario, will be 120 months,

8    followed by five years in the other case, so that's 15 years.

9    That's more than sufficient, Your Honor for, for the offense

10   for which the defendant is being sentenced.

11           I trust, Your Honor, that I have not left anything,

12   but should the Court have any questions or would like me to

13   address anything additional, Your Honor, I will be more than

14   glad to do so, Your Honor.  Thank you.

15           THE COURT:  Thank you.

16           Mr. Ramos, you heard the prosecutor.  You heard your

17   counsel.  At this point, you may address the Court to share any

18   thoughts or information you believe are important to your

19   sentence.  Take your time.

20           THE DEFENDANT:  Good morning, Your Honor.  I take

21   this time to ask forgiveness from my family.

22           I am sorry for having made you suffer, and thank you

23   for your support, for having been there for me.

24           I'm sorry.  I can't talk.  I'm just asking to be

25   forgiven.  I am truly repentent of everything.

1          THE COURT:  Thank you.

2          MR. VEGA-PACHECO:  Excuse me, Your Honor, if I may.

3          THE COURT:  Yes.

4          MR. VEGA-PACHECO:  Thank you, Your Honor.

5          THE COURT:  This is the sentence of the Court:

6          On June 27, 2017, the defendant, Edgardo Ramos, pled

7    guilty to Counts One and Six of the Indictment in Criminal Case

8    15-696, which charged him with violating 21 U.S.C. 841(a)(1),

9    846 and 860, a Class A felony, and 18 U.S.C. 924(c)(1)(A), a

10   Class A felony.

11         To evaluate the appropriate sentence, the Court has

12   examined:

13   Number 1.  The statutory offenses to which Mr. Ramos pled

14   guilty;

15   Number 2.  The November 1, 2016, edition of the United

16   States Sentencing Guidelines; and

17   Number 3.  All of the sentencing factors included in 18

18   U.S.C. 3553(a).

19         First, for the offense charged in Count One, Mr.

20   Ramos could be sentenced to a term of imprisonment of not less

21   than 10 years, and up to life, a term of supervised release of

22   no less than 10 years, a fine not to exceed $20 million, and a

23   special monetary assessment of $100.  For the offense charged

24   in Count Six, Mr. Ramos could be sentenced to a term of

25   imprisonment of no less than 5 years, and up to life, a term of

1   supervised release of no more than 5 years, a fine not to

2   exceed $250,000, and a special monetary assessment of $100.

3          Second, the guideline for 21 U.S.C. 841(a)(1), 846

4   and 860 is found in Sections 2D1.1(c) and 2D1.1(a)(1).

5          Section 2D1.1(c) provides that an offense involving

6   at least 4, but no more than 15 kilograms of cocaine, has a

7   base offense level of 30, under Section 2D1.1(c)(5).  As the

8   offense took place within a protected location, two additional

9   levels are warranted on the authority of Section 2D1.2(a)(1).

10          The defendant was a manager or supervisor of the

11   criminal activity that involved five or more participants, or

12   was otherwise extensive; therefore, four levels are added.

13          The Court understands the arguments put forth by the

14   parties.  The argument was well presented, but the Court

15   disagrees and agrees with the probation officer, these four

16   levels, in accordance with Section 3B1.1(a).

17          Since Mr. Ramos demonstrated acceptance of

18   responsibility, the offense level is reduced three levels, in

19   conformity with Sections 3E1.1(a) and (b).  Count Six carries a

20   statutory minimum term of imprisonment between five years and

21   life.

22          Based on a total offense level of 33, and a criminal

23   history category of II, the guideline imprisonment range for

24   this offense runs from 151 to 188 months, with a fine range of

25   $35,000 to $20 million, in addition to a supervised release

1    term of at least 10 years.

2         As to Count Six, the imprisonment range runs from 5

3    years to life, in line with Section 2K2.4(b), with a fine of

4    $250,000, plus a supervised release term of 2 to 5 years.

5         The Court has reviewed the advisory guideline

6    calculations and finds that the presentence investigation

7    report has adequately applied them.  They satisfactorily

8    reflect the components of the offenses by considering their

9    nature and circumstances.

10        Third, with regard to the 3553(a) factors, as

11   indicated in the presentence report, Mr. Ramos is a 40-year-old

12   U.S. citizen, resident of Cayey, Puerto Rico.  He has four

13   dependents.  He completed a GED grade education while

14   incarcerated and was self-employed in construction.

15        He has no physical or mental health history.  He has

16   a reported history of substance abuse that commenced at the age

17   of 18 with marijuana.  On the date of the arrest, he exercised

18   his right to decline to be drug-tested.  This is his fourth

19   known arrest and third conviction.

20        He admitted that he was a leader in the

21   drug-trafficking organization involved in this case.  He

22   controlled, supervised and had decisional power over the

23   drug-trafficking operations at the drug distribution points

24   within the Luis Munoz-Morales Public Housing Projects and other

25   areas in Cayey, Puerto Rico.

1     He was also the owner of the cocaine base, cocaine,

2     marijuana and heroin distributed at the drug points.  He

3     received the proceeds from the sale of the controlled

4     substances he owned.

5     He possessed firearms in furtherance of the

6     drug-trafficking activities.  He provided, instructed and

7     allowed other members of the conspiracy to carry firearms of

8     different brands and calibers to protect the drug-distribution

9     business.

10     In addition, he ordered and authorized other

11     coconspirators to carry out acts of violence in furtherance of

12     the drug-trafficking operations and admitted that he joined the

13     conspiracy willfully and knowingly, and that it was his intent

14     at all times that the object of the conspiracy succeed.

15     With this background, the Court deems that a sentence

16     at the middle end of the guideline range for Count One,

17     consistent with the upper end of the range the parties agreed

18     to in the plea agreement, followed by 60 months of imprisonment

19     as to Count Six, is a sentence that is just and not greater

20     than necessary to promote the objectives of sentencing.

21     As agreed by the parties in the plea agreement, the

22     term of imprisonment served in Case 13-038, presided over by

23     Judge Jay Garcia, shall be deducted from the sentence in this

24     case, in accordance with Section 5K2.23.  Therefore, on the

25     judgment of the Court, Mr. Edgardo Ramos is hereby committed to

1    the custody of the Bureau of Prisons to be in prison for a term

2    of 168 months, less the two years, four months and 24 days of

3    credit for the time he already served in Case 13-038, as

4    reflected in the certification submitted at Docket Number

5    1302-1 as to Count One, and 60 months as to Count Six, to be

6    served consecutively to each other.

7            Upon release from confinement, Mr. Ramos shall be

8    placed on supervised release for a term of 10 years as to Count

9    One, and five years as to Count Six, to be served concurrently

10   with each other, under the following terms and conditions:

11           Number 1.  The defendant shall not commit another federal,

12   state or local crime and shall observe the standard conditions

13   of supervised release recommended by the United States

14   Sentencing Commission and adopted by this Court;

15           Number 2.  The defendant shall not unlawfully possess or

16   use controlled substances;

17           Number 3.  The defendant shall participate in an approved

18   substance abuse monitoring and/or treatment services program

19   and shall submit to a drug test within 15 days of release; and

20   thereafter, to random drug-testing, no less than 3 samples

21   during the supervision period, and not to exceed 104 samples

22   per year, in accordance with the Drug Aftercare Program Policy

23   of the United States Probation Office approved by this Court.

24           If deemed necessary, the treatment will be arranged

25   by the officer in consultation with the treatment provider.

1 The defendant is required to contribute to the cost of services

2 rendered (co-payment) in an amount arranged by the probation

3 officer --

4   MR. VEGA-PACHECO:  Excuse me.  The defendant is not

5 -- apparently, there is a problem with the system.

6   THE COURT:  I'm sorry.

7   MR. VEGA-PACHECO:  So I'm sorry to interrupt you, but

8 rather than repeat it --

9   THE COURT:  Thank you for letting me know.  When did

10 the problem start?

11   MR. VEGA-PACHECO:  With the supervised release, Your

12 Honor.

13   THE COURT:  All right.  I'll go over the conditions

14 again.

15   These are the terms and conditions of supervised

16 release.

17   Was he able to hear the terms of supervised release,

18 the period during which he will be on supervised release?

19   THE INTERPRETER:  That's where I --

20   THE COURT:  Lost him?

21   All right.  Let me start with the section related to

22 supervised release.

23   Upon release from confinement, Mr. Ramos shall be

24 ordered -- or shall be placed on supervised release for a term

25 of 10 years as to Count One, and 5 years as to Count Six, to be

1    served concurrently with each other, under the following terms

2    and conditions:

3         Number 1.  The defendant shall not commit another federal,

4    state or local crime and shall observe the standard conditions

5    of supervised release recommended by the United States

6    Sentencing Commission and adopted by this Court;

7         Number 2.  The defendant shall not unlawfully possess or

8    use controlled substances;

9         Number 3.  The defendant shall participate in an approved

10   substance abuse monitoring and/or treatment services program

11   and submit to a drug test within 15 days of release; and

12   thereafter, to random drug-testing, no less than 3 samples

13   during the supervision period, and not to exceed 104 samples

14   per year, in accordance with the Drug Aftercare Program Policy

15   of the United States Probation Office, approved by this

16   Court.

17              If deemed necessary, the treatment will be arranged

18   by the officer in consultation with the treatment provider.

19   The defendant is required to contribute to the cost of services

20   rendered (co-payment) in an amount arranged by the probation

21   officer, based on ability to pay or availability of third-party

22   payment;

23        Number 4.  The defendant shall refrain from possessing

24   firearms, destructive devices and other dangerous weapons;

25        Number 5.  The defendant shall submit his person,

1    property, house, vehicle, papers, computers, other electronic

2    communication or data storage devices, and media, to a search

3    conducted by a United States Probation Officer, at a reasonable

4    time, in a reasonable manner, based on reasonable suspicion of

5    contraband or evidence of a violation of a condition of

6    release.  Failure to submit to a search may be grounds for

7    revocation of release.  The defendant shall warn any other

8    occupants that the premises may be subject to search pursuant

9    to this condition;

10       Number 6.  The defendant shall participate in transitional

11   and re-entry support services, including cognitive behavioral

12   treatment services, under the guidance and supervision of the

13   probation officer.  He shall remain in the services until

14   satisfactorily discharged by the service provider, with the

15   approval of the probation officer;

16       Number 7.  The defendant shall remain under curfew at his

17   residence of record from 6:00 p.m. to 6:00 a.m. for a period of

18   six months, to commence upon his release from imprisonment.

19   During this time, he shall remain in the residence, except for

20   employment or other activities approved in advance by the

21   probation officer.

22           In addition to any other telephone or cell phone, he

23   shall maintain a telephone at his residence without a modem, an

24   answering machine or a cordless feature, during the term of

25   electronic monitoring.  He shall wear an electronic device 24

1    hours a day and shall observe the rules specified by the

2    probation officer.

3         He is ordered to pay the daily cost of the electronic

4    monitoring device.  Payment shall be based on ability to pay or

5    availability of third-party payment as approved by the Court;

6    Number 8.  The defendant shall provide the United States

7    Probation Officer access to any financial information upon

8    request;

9    Number 9.  The defendant shall cooperate in the collection

10   of a DNA sample as directed by the probation officer, in

11   accordance with the Revised DNA Collection Requirements and 18

12   U.S.C. 3563(a)(9).

13        The Court finds that these conditions are reasonably

14   related to the offenses of conviction and to the sentencing

15   factors laid out in 18 U.S.C. 3553; that they are consistent

16   with the pertinent policy statements issued by the Sentencing

17   Commission on the authority of 28 U.S.C. 994(a), and that there

18   is no greater deprivation of liberty than what is reasonably

19   necessary to fulfill all of the sentencing objectives,

20   including just punishment, deterrence, rehabilitation and

21   positive re-integration to the community.

22        Considering Mr. Ramos' financial condition, no fine

23   is imposed.  However, a special monetary assessment in the

24   amount of $100 is imposed as to each count, as required by the

25   law, for a total of $200.

1          Pursuant to 21 U.S.C. 853(a)(1) and (2), upon

2     conviction of Count One, the defendant shall forfeit to the

3     United States any property constituting or derived from any

4     proceeds obtained, directly or indirectly, as a result of the

5     offenses, and any property used, or intended to be used, in any

6     manner or part, to commit or to facilitate the commission of

7     the offenses.  Similarly, based upon conviction of Count Six,

8     he shall forfeit to the United States any firearms and

9     ammunition involved or used in the commission of the

10     offense, in accordance with 18 U.S.C. 924(d) and 28 U.S.C.

11     2461(c).

12          Mr. Ramos, you can appeal your conviction if you

13     believe that your guilty plea was somehow unlawful or

14     involuntary or if there is other fundamental defect in the

15     proceedings that was not waived by your guilty plea.  You also

16     have the statutory right to appeal your sentence under certain

17     circumstances, particularly if you think that the sentence is

18     contrary to law.

19          With few exceptions, any notice of appeal must be

20     filed within 14 days of judgment being entered in your case.

21     If you are not able to pay the cost of an appeal, you may apply

22     for leave to appeal in forma pauperis.  If you so request, the

23     Clerk of the Court will prepare and file a notice of appeal on

24     your behalf.

25          Are there any motions at this time?

```
 1            MR. RIVERA-GIRAUD:  Yes, Your Honor.  The United
 2    States move for the dismissal of the remaining counts.
 3            THE COURT:  So ordered.
 4            Mr. Vega?
 5            MR. VEGA-PACHECO:  May I, Your Honor?
 6            THE COURT:  Yes.
 7            MR. VEGA-PACHECO:  Your Honor, if I may, two, two
 8    items I would like to bring to the Court's attention --
 9            THE COURT:  Go ahead.
10            MR. VEGA-PACHECO:  -- inasmuch as all this
11    information will follow the defendant wherever he goes.
12            THE COURT:  Yes, sir.
13            MR. VEGA-PACHECO:  In this particular case, it is
14    reported that he yielded -- or failed to provide a urine sample
15    during the term of his supervised release.  What happened was,
16    he had provided one the day before, obviously, that yielded
17    negative.
18            But on the day that he was arrested, he had, he had,
19    moments before, had gone to the bathroom, so he was unable to
20    provide a sample.  And, obviously, they termed that, or they
21    determined that when that happens, that's a positive.  But the
22    defendant has not engaged in the use of narcotics since his
23    release.
24            Secondly, Your Honor, I would pray that the Court
25    recommend that the defendant be sentenced somewhere in Florida
```

1    where he can work and make the best of his time, Your Honor.

2         THE COURT:  With respect to designation, the Court

3    will so recommend.  Any particular --

4         MR. VEGA-PACHECO:  Your Honor, somewhere that has the

5    facilities for him to work.  Some of them are -- I have not

6    kept abreast of what's -- there have been too many changes in

7    the states in terms of places of confinement.  But somewhere in

8    Florida, where his family may be able to visit him, and where

9    he will be able to work.

10        THE COURT:  The Court will so recommend.

11        With respect to the drug-testing, what the Court said

12   was that he exercised his right to decline to be drug-tested.

13        MR. VEGA-PACHECO:  It was that he was unable to

14   because he had given one the day before.

15        THE COURT:  All right.  The record shall so reflect.

16        MR. VEGA-PACHECO:  Thank you, Your Honor.

17        THE COURT:  Very well.

18        The Court directs that the transcript of the

19   sentencing proceedings be forwarded to the United States

20   Sentencing Commission, the United States Bureau of Prisons, as

21   well as the probation office, within 30 days.

22        Thank you all for being in court this morning.

23        MR. VEGA-PACHECO:  Thank you, Your Honor.  Permission

24   to withdraw.

25        THE COURT:  Permission granted.

```
 1              MR. VEGA-PACHECO:  Thank you, Your Honor.

 2         (Proceedings concluded at 10:27 a.m.)

 3                           -oOo-

 4    UNITED STATES DISTRICT COURT )
                                   )  ss.
 5    DISTRICT OF PUERTO RICO      )

 6

 7                     REPORTER'S CERTIFICATE

 8

 9         I, CINDY LEE BROWN, do hereby certify that the

10    above and foregoing, consisting of the preceding 27 pages,

11    constitutes a true and accurate transcription of my

12    stenographic notes and is a full, true and complete transcript

13    of the proceedings to the best of my ability.

14         Dated this 14th day of September, 2018.

15

16

17                          /s/ Cindy Lee Brown

18                          _____
                            CINDY LEE BROWN, Federal
                            Official Court Reporter
19                          150 Carlos Chardon, Room 150
                            San Juan, PR  00918
20                          (787) 772-3478

21

22

23

24

25
```